UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| JERMAINE SMITH, ) | |
| ) | |
| **Plaintiff,** ) | |
| v. ) | No.: 21-cv-3140-MMM |
| ) | |
| ROB JEFFREYS, *et al.*, ) | |
| ) | |
| **Defendants.** ) | |

## MERIT REVIEW

Plaintiff, currently confined at the Menard Correctional Center, filed a complaint under 42 U.S.C. §1983, alleging violations of due process, medical deliberate indifference and a state law claim against Defendants at the Western Illinois Correctional Center ("WICC"). Plaintiff initially filed the complaint in the Northern District of Illinois, and it has recently been transferred to the Central District of Illinois where venue is proper.

The case is now before the Court for a merit review pursuant to 28 U.S.C. § 1915A. In reviewing the Complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor. *Turley v. Rednour,* 729 F.3d 645, 649-51 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States,* 721 F.3d 418, 422 (7th Cir. 2013)(citation and internal quotation marks omitted). While the pleading standard does not require "detailed factual allegations", it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Wilson v. Ryker*, 451 Fed. Appx. 588, 589 (7th Cir. 2011) quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

Plaintiff pleads that on October 12, 2019, his cellmate, Mr. Baker, reported that Plaintiff had "done something to him" in the cell. Officers responded and handcuffed Plaintiff.

1

Individuals from Internal Affairs advised Plaintiff of his rights, including the right to remain silent. Plaintiff was thereafter placed in investigation status without his personal property, a television, a Walkman, and an MP3 player.

Plaintiff asserts that unidentified officers and staff started the rumor that he had raped his cellmate. He provides affidavits from several inmates who heard from staff members that Plaintiff had allegedly raped inmate Baker. Plaintiff asserts that, as a Muslim, rumors that he engaged in homosexual activity could place him at risk for reprisal and have caused him to become severely depressed, feeling helpless and hopeless. Plaintiff asserts a state law claim for the intentional infliction of emotional distress ("IIED"), providing affidavits from several inmates who heard staff members repeat the rumor. Neither Plaintiff nor the affiants, however, name any Defendant in either initiating or spreading the rumor.

Defendant Lieutenant Maher of Internal Affairs subsequently attempted to interview Plaintiff. Plaintiff, believing he was facing criminal charges, refused to talk without counsel present. Despite this, Plaintiff alleges that Defendant Maher falsely recorded that Plaintiff had admitted to "getting high" on prescription medications and holding a pen to his cellmate's throat.

Plaintiff provides a copy of the disciplinary ticket which documents that on October 12, 2019, inmate Baker reported that Plaintiff Smith had grabbed him and began cutting his throat with a cold and sharp object, threatening to kill him. Inmate Baker was noted to have multiple abrasions and lacerations to the front of his neck, an abrasion under his left eye, and an abrasion on his left wrist. Notwithstanding, Plaintiff alleges that Internal Affairs Officer Defendant Richmiller undertook an inadequate investigation and that Defendant Maher falsely charged him with assault, dangerous contraband, and drugs.

On November 15, 2019, the charges went to hearing before Adjustment Committee members, Defendants Mountain and McKittrick. Plaintiff presented a written statement in which he refuted the admissions he had allegedly made to Defendant Maher. He also asked that two inmate witnesses be called to testify, a request which was denied. Plaintiff was found guilty and sentenced to 6 months in segregation, demoted to C Grade, subject to contact visit restrictions and a disciplinary transfer. Plaintiff asserts that the Adjustment Committee denied him due process in not calling his witnesses and not fully considering the statement he had submitted.

Plaintiff alleges that as a result of the conviction, he was placed in disciplinary segregation in a cell that had feces and blood on the walls. When Plaintiff requested to be moved or to be provided cleaning supplies, these were denied. Plaintiff does not reveal how long he was held in this cell. He also does not discuss the conditions in investigative segregation where he was previously held or claim that the conditions in disciplinary segregation were substantially worse.

Plaintiff also alleges, with little detail, that Defendant Maher was deliberately indifferent in withholding Plaintiff's diabetes medication. While it is not clear, it appears that the medication was in Plaintiff's property box which was not transferred with him when he was placed in investigatory segregation. Plaintiff does not indicate whether the medication was provided by nursing staff, or how long he went without it. Furthermore, he does not allege that Defendant Maher was aware that the medication was not available to him.

Plaintiff pleads that Rob Jeffreys, director of the Illinois Department of Corrections ("IDOC"), Warden Hammers and Assistant Warden Watson are also liable for the alleged violations. Plaintiff claims, generally, that Defendants Jeffreys, Hammers and Watson have given the "green light" to officers to write false disciplinary tickets, and to Adjustment

Committee members to find prisoners guilty of the false charges. Plaintiff claims that other inmates also asserting that they have been falsely charge and convicted have sued these individuals, thus placing Defendants on notice of the issue.

## ANALYSIS

Plaintiff alleges that his due process rights were violated in the investigation and issuance of the disciplinary ticket and in the Adjustment Committee hearing. A procedural due process claim requires a two-part analysis: whether the Plaintiff was deprived of a protected liberty or property interest, and if so, what process was due. *Hamlin v. Vaudenberg,* 95 F.3d 580, 584 (7th Cir. 1996). In other words, if a constitutional right is identified, then procedural due process must be provided. *Brokaw v. Mercer Co.,* 235 F.3d 1000, 1020 (7th Cir. 2000). Here, however, Plaintiff has not adequately pled a protected interest as a sentence to segregation, demotion to C-Grade, and disciplinary transfer with no loss of good-time credit will not trigger due process protections. *Zimmerman v. Tribble,* 226 F.3d 568, 572 (7th Cir. 2000) (segregation and transfer doesn't implicate constitutional interest); *Thomas v. Ramos,* 130 F.3d 754, 762 n. 8 (7th Cir. 1997) (demotion to C grade status doesn't implicate constitutional interest). This is so, unless the conditions in segregation result in "atypical and significant worsening" of the conditions of confinement. *Sandin v. Conner,* 515 U.S. 472, 484-486 (1995); *Thomas v. Ramos*, 130 F.3d 754, 760-762 (7th Cir. 1997).

Here Plaintiff has pled that he was placed in a cell with feces in blood on the walls. It is unclear how long he was so held, and Plaintiff does not claim that these conditions were significantly worse than those conditions in which he was held in investigative segregation. *See Lekas v. Briley*, 405 F.3d 602, 610-12 (7th Cir. 2005) (citing *Williams v. Ramos,* 71 F.3d 1246 (7th Cir.1995)). There, the court comparing the conditions in disciplinary segregation with those

in discretionary segregation, found them "not so atypical and significant as to constitute a deprivation of a liberty interest."). *Lekas*, 405 F.3d at 612. *See Williams,* 71 F.3d at 1249 (finding that plaintiff who was confined twenty-four hours a day, handcuffed whenever he left his cell, and unable to participate in activities or to have contact with other inmates or staff failed to state a liberty interest). This was so, as the complained-of conditions did not "greatly exceed[s] what one could expect from prison life generally…") Plaintiff will be given an opportunity to replead his due process claim with more particularity.

Plaintiff also asserts that individuals who are not named Defendants passed on rumors that he had raped his cellmate. As he does not implicate any Defendant in this claim, it is dismissed.

While Plaintiff faults Defendant Maher for not providing his property box containing his diabetes medication, he does not assert that Defendant was aware that his medication was not available to him. In addition, he does not assert that he had no other recourse and did not receive the medication from medical staff while in investigative segregation. Plaintiff will have an opportunity to replead this claim as well.

Plaintiff's IIED claim also fails. "Under Illinois law, a plaintiff claiming intentional infliction of emotional distress must demonstrate that the defendant intentionally or recklessly engaged in 'extreme and outrageous conduct' that resulted in severe emotional distress." *Dent v. Nally*, No. 16-00442, 2016 WL 2865998, at *4 (S.D. Ill. May 17, 2016) (internal citations omitted). "[E]motional distress alone is not sufficient to give rise to a cause of action. The emotional distress must be severe...unendurable by a reasonable person…" *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1030 (7th Cir. 2006) (internal citations omitted). Defendant must have acted with knowledge of the probable impact his conduct would have on plaintiff. *Burks v.*

*Lt. Sara Soto*, No. 15-00055, 2016 WL 6442181, at *4 (N.D. Ill. Nov. 1, 2016) (internal citations omitted). Here, Defendants' actions arose after Plaintiff's cellmate, Mr. Baker, reported being attacked by Plaintiff, sporting verifiable injuries. Here, the Court can find neither that Defendants' actions were "extreme and outrageous" or that Plaintiff suffered sufficient emotional distress to plead such a claim. The IIED claim is, therefore, dismissed with prejudice.

Plaintiff also names IDOC Director Jeffreys, and Wardens Hammers and Watson, alleging that they are liable for the due process violations. The doctrine of r*espondeat superior* does not apply to §1983 cases where liability is predicated on fault. Section 1983 liability is predicated on fault, so to be liable, a defendant must be "personally responsible for the deprivation of a constitutional right." *Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir.2001) (quoting *Chavez v. Ill. State Police,* 251 F.3d 612, 651 (7th Cir.2001)). To be held liable for the conduct of their subordinates, supervisors must "know about the [unconstitutional] conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *T.E. v. Grindle,* 599 F.3d 583, 588 (7th Cir.2010) (quoting *Jones v. City of Chicago,* 856 F.2d 985, 992 (7th Cir.1988)).

Plaintiff claims without detail, that other prisoners had brought similar claims, thus placing Defendants on notice that inmates were not being afforded due process. A reference to other lawsuits, however, has been found insufficient to place a defendant on notice of a pattern of employee misconduct. *Rikas v. Babusch*, 2014 WL 960788 at *2-3, (N.D.Ill. Mar. 12, 2014) (court would not consider other lawsuits, alleging a pattern of employee misconduct, as sufficient notice to municipality).

**IT IS THEREFORE ORDERED:**

1. Plaintiff's complaint is dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 1915A. Plaintiff will have 30 days from the entry of this order in which to replead his claims. The pleading is to be captioned Amended Complaint and is to include all of Plaintiff's claims without reference to a prior pleading. Failure to file an amended complaint will result in the dismissal of this case, without prejudice, for failure to state a claim. The IIED claim is DISMISSED with prejudice.

2. Plaintiff's motion for recruitment of pro bono counsel [2] is DENIED with leave to reassert if he files an amended complaint.


ENTERED:  8/27/2021

                                          s/Michael M. Mihm
                                          MICHAEL M. MIHM
                                  UNITED STATES DISTRICT JUDGE